■ JOHN E. FISHER CONSTRUCTION Co., INC., Respondent, v TOWN OF ONONDAGA, Appellant.—Amended order unanimously reversed, on the law, without costs, defendant's motion granted, and complaint dismissed. Memorandum: Defendant appeals from an order dismissing its first, third and fourth affirmative defenses, and denying its cross motion for an order dismissing plaintiff's complaint. Since plaintiff's notice of claim was timely served and this action timely commenced pursuant to Town Law § 65, we agree that defendant's third and fourth affirmative defenses were properly dismissed. It was error, however, to dismiss defendant's first affirmative defense and to deny defendant's motion to dismiss the complaint.

This action seeks damages for extra work claimed by plaintiff to have been performed in the construction of a sewer project. The contract between the parties is a standard form of a construction contract with an appendix added to provide supplemental conditions required in Federally aided projects of this type. Defendant, relying upon section G.9.07 of the general provisions of the contract, contends that plaintiff, by acceptance of final payment, released defendant from any further liability under the contract. Plaintiff argues that section G.9.07 is superseded by the Federally required provisions contained in appendix C-2 of the supplemental conditions and that its claim for extra work survives final payment.

Section G.9.07 of the general provisions is entitled "ACCEPTANCE OF FINAL PAYMENT CONSTITUTES RELEASE" and provides as follows: "The acceptance by the Contractor of the Final Payment shall be and shall operate as a release to the Owner of all claims and of all liability to the Contractor for all things done or furnished in connection with this work, and for every

act and neglect of the Owner and others relating to or arising out of this work".

Plaintiff relies upon sections 1, 2, 3 and 4 of appendix C-2. Section 1 (a) provides: "The Owner and the Contractor agree that the following supplemental general provisions shall apply to the work to be performed under this contract and that such provisions shall supersede any conflicting provisions of this contract."

Section 2 of appendix C-2 is entitled "Changes" and allows the owner to order changes which are within the general scope of the contract. Section 2 (f) thereof provides: "No claim by the Contractor for an equitable adjustment hereunder shall be allowed if asserted after final payment under this contract."

Section 3 of appendix C-2 is entitled "Differing Site Conditions" and deals with unforeseen subsurface conditions. Section 3 (c) thereof also provides: "No claim by the Contractor for an equitable adjustment hereunder shall be allowed if asserted after final payment under this contract."

Section 4 of appendix C-2 is entitled "Suspension of Work" and deals with delays. Section 4 (c) thereof provides: "No claim under this clause shall be allowed (1) for any costs incurred more than 20 days before the Contractor shall have notified the Owner in writing of the act or failure to act involved (but this requirement shall not apply as to a claim resulting from a suspension order), and (2) unless the claim, in an amount stated, is asserted in writing as soon as practicable after the termination of such suspension, delay, or interruption, but not later than the date of final payment under the contract."

It is conceded that the defendant's engineers prepared a "TWENTY-FIRST AND FINAL ESTIMATE" on December 29, 1982, showing the amount due plaintiff to be $2,000. The president of the plaintiff signed the estimate on January 7, 1983, and also, on that date, signed a voucher for payment on which was printed in large-face type "AMOUNT DUE CONTRACTOR, TWENTY-FIRST AND FINAL ESTIMATE—$2,000.00". On April 8, 1983 defendant made the $2,000 payment by check to plaintiff and plaintiff indorsed and negotiated the check.

It is also conceded that plaintiff, long before final payment was made, had asserted claims against the defendant for extra work and expenses, arising from a delay in starting the work, delays in making payments, increase in the cost of asphalt, additional paving, unforeseen encountering of excessive under-

ground water and boulder formation; and that on July 30, 1981, plaintiff sent to defendant's Town Attorney a report showing extra expenses of $415,750.

It is well settled that a release clause such as that in section G.9.07 will be given full force and effect according to its terms *(Brandt Corp. v City of New York,* 14 NY2d 217). Plaintiff does not assert that it made a mistake in accepting final payment; its only argument is that the supplemental general provisions of appendix C-2 supersede section G.9.07. The contract clearly provides, however, that the supplemental general provisions supersede section G.9.07 only if they conflict with that section. No conflict is presented here. Supplemental provisions 2 (f), 3 (c) and 4 (c) are completely reconcilable with general provision G.9.07. The former provide that claims for extra work must be asserted before final payment is made, while the latter provides that acceptance of final payment operates as a release. These provisions are in harmony, not in conflict. Applying the usual rules of contract construction *(see, Matter of Village of Jordan v Memphis Constr. Co.,* 109 AD2d 1055), the contract is unambiguous and section G.9.07 of the general provisions is not superseded. Accordingly, by accepting final payment, plaintiff released defendant from any further liability on the contract. Defendant's motion for summary judgment dismissing plaintiff's complaint must be granted. (Appeal from amended order of Supreme Court, Onondaga County, Tenney, J.—dismiss defense.) Present—Dillon, P. J., Doerr, Boomer, Green and O'Donnell, JJ.